IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AARON DITTER and KANSAS STATE
COUNCIL OF FIRE FIGHTERS,

      Plaintiffs,

      v.                                                                    Case No. 15-9083-JAR-JPO

CITY OF HAYS, KANSAS, GARY BROWN,
SR., in his individual and official capacities, and
PAUL BRISENO, in his individual and official
capacities,

      Defendants.

<u>MEMORANDUM AND ORDER</u>

Plaintiffs Aaron Ditter and the Kansas State Council of Fire Fighters bring this action

under 42 U.S.C. § 1983 against Defendants City of Hays, Kansas, Gary Brown, Sr., and Paul

Briseno.  Plaintiffs allege Defendants violated their right to associate under the First Amendment

by prohibiting Ditter from participating in activities of the Kansas State Council of Fire Fighters

("KSCFF").  Before the Court are Defendant City of Hays' Motion to Dismiss (Doc. 16), and

Defendants Gary Brown, Sr. and Paul Briseno's Motion to Dismiss (Doc. 20).  Both motions

seek dismissal under Fed. R. Civ. P. 12(b)(1) for lack of standing, and under 12(b)(6) for failure

to state a claim upon which relief may be granted.  As described more fully below, the Court

denies Defendants' motions to dismiss.

I.      **Background**

The Complaint in this case alleges that Plaintiff Kansas State Council of Fire Fighters

("KSCFF") is "a labor organization whose purpose is the mutual protection and advancement of

interests of all paid fire fighters within the State of Kansas."[1]  Plaintiffs further allege that

KSCFF:

> Is a labor organization whose purpose is to cultivate friendship and
> fellowship between all paid fire fighters within the State of Kansas;
> to assist in the promotion and protection of legislation favorable to
> the interests of fire fighters; to place the fire fighters in the State of
> Kansas on a higher degree of skill and efficiency; and to aid and
> assist members in the protection of their rights as prescribed by the
> laws of the State of Kansas and the political subdivisions thereof.[2]

Plaintiffs allege that KSCFF is not the exclusive bargaining agent for the City's fire fighters, nor

is it involved in collective bargaining or grievances with the City of Hays.  Many members of the

KSCFF Board are supervisory employees "within their own departments."  From 2006 to 2014,

Ditter was one of four Vice-Presidents of the KSCFF.  In this role, he was involved in education

of, and lobbying on behalf of, fire fighters in western Kansas.  He did not engage in "Council

business" with the City.

Hays Firefighters, International Association of Fire Fighters ("IAFF") Local 2119 is the

local IAFF affiliate that exclusively represents all full-time fire fighters below the rank of

Captain in the Department.  Although Local 2119 and KSCFF are affiliates of the IAFF, they are

separate and autonomous entities.  Local 2119 is not controlled by the officers, members,

policies, positions, or practices of the KSCFF.  Between 2002 and 2011, Ditter was the President

of Local 2119.  Ditter was promoted to Captain in 2011; he has worked for the City for nearly

fifteen years.  At the time he was promoted to Captain, he resigned from his position as the Local

2119 President, but not from the KSCFF.

Defendant Gary Brown, Sr. is the Chief of the City of Hays' Fire Department.  Defendant

Paul Briseno is Assistant City Manager.  In January 2014, despite Brown's knowledge of Ditter's

---

[1]Doc. 1 ¶ 6.

[2]*Id.* ¶ 11.

role with the KSCFF for many years, Brown and Briseno threatened Ditter that if he did not resign his position as Vice President with the KSCFF, he would face demotion and other disciplinary action.  Ditter resigned from the KSCFF in February 2014 out of fear of demotion or other discipline.

On March 19, 2014, an attorney for the Council wrote a letter to John T. Bird, the Hays City Attorney, stating that the Council and Local 2119 are separate legal entities and noting that Ditter has rights guaranteed by the First Amendment to the U.S. Constitution.  In response, on June 30, 2014, City Attorney Bird responded with a letter stating that "a municipality, in order to maintain an efficient fire department, may prohibit management employees from belonging to an organization of rank and file firefighters," and stated that the City did not intend to change its position.

## II.     Standing

### A.     Standard

Defendants move to dismiss KSCFF for lack of standing because it is not a "person" entitled to bring suit under 42 U.S.C. § 1983.  One of several doctrines reflecting Article III's case-or-controversy limitation on judicial power is the doctrine of standing.  That doctrine requires federal courts, before considering the merits of an action, to "'satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [the plaintiff's] invocation of federal-court jurisdiction.'"[3]  The Supreme Court has found the "irreducible constitutional minimum of standing" to contain three elements:

> First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or

---

[3]*Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result of the independent action of some third party not before the court."  Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."[4]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing each element of standing "with the manner and degree of evidence required at the successive stages of the litigation."[5]  Standing is evaluated based on the facts as they exist at the time the Complaint is filed.[6]  At the pleading stage, the Court "'presume[s] that general allegations embrace those specific facts that are necessary to support the claim,'"[7] and "general factual allegations of injury resulting from the defendant's conduct may suffice.'"[8]  Nonetheless, the Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[9]

The parties have attached evidence to their motions on the standing issue, and urge that the "court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.  In such instances, a court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a Rule 56 motion [for summary judgment]."[10]  While this is the general rule when the Court is presented with a factual attack on its subject matter jurisdiction, "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the

---

[4]*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

[5]*Id.* at 560–61; *Tandy v. City of Wichita*, 380 F.3d 1277, 1284 (10th Cir. 2004).

[6]*Tandy*, 380 F.3d at 1284.

[7]*Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)).

[8]*Id.*

[9]*Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994) (citations omitted).

[10]*Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)) (citations omitted).

jurisdictional question is intertwined with the merits of the case."[11]  "[T]he focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather, the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."[12]  Here, resolution of the jurisdictional question requires the Court to determine whether KSCFF can be a claimant under the governing substantive statute.  The Court therefore converts Defendants' Rule 12(b)(1) motions into motions under Rule 12(b)(6) and considers whether KSCFF has stated a plausible claim for relief under § 1983.

In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[13]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[14]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[15]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[16]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but]

---

[11]*Holt*, 46 F.3d at 1003.

[12]*Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000).

[13]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[14]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[15]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[16] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[17]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[18]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[19]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[20]

If the Court on a Rule 12(b)(6) motion looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for summary judgment.[21]  However, the court may consider documents which are referred to in the complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[22]

### B.    Discussion

Defendants argue that KSCFF's injury cannot be redressed by 42 U.S.C. § 1983 since KSCFF is not a "person" entitled to relief.  Instead, Defendants urge that KSCFF should be characterized an unincorporated association that is not entitled to bring suit under Tenth Circuit precedent.[23]  Plaintiff responds that it is a labor organization that is entitled to bring suit as a

---

[17]*Id.*

[18]*Id.* at 679

[19]*Id.*

[20]*Id.* at 678.

[21]Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers,* 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[22]*See Alvardo v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[23]*See Lippoldt v. Cole*, 468 F.3d 1204, 1216 (10th Cir. 2006).

person under § 1983.[24]  The Court agrees with Defendants that Plaintiff's bare allegation that it is

a labor organization is not entitled to an assumption of truth at the pleading stage because it is a

legal conclusion couched as a factual allegation.  Instead, the Court evaluates whether other

factual allegations in the Complaint support Plaintiffs' contention that KSCFF is a labor

organization.

> Under § 1983:
>
>> Every person who, under color of any statute, ordinance,
>> regulation, custom, or usage, of any State or Territory or the
>> District of Columbia, subjects, or causes to be subjected, any
>> citizen of the United States or other person within the jurisdiction
>> thereof to the deprivation of any rights, privileges, or immunities
>> secured by the Constitution and laws, shall be liable to the party
>> injured in an action at law, suit in equity, or other proper
>> proceeding for redress . . . ."

The Supreme Court has construed "other persons" in this statute to include labor unions,[25]

corporations,[26] and non-profit organizations.[27]  The Tenth Circuit has held that an unincorporated

association is not a person entitled to bring suit under § 1983.[28]  Here, the parties dispute whether

KSCFF is a labor union or an unincorporated association.

There is no authority that defines "labor union" in the context of § 1983.  However, in

*Lippoldt*, the Tenth Circuit suggested that a labor union's status as a person is based on its

similarities to a corporation.[29]  For this proposition, the court cited *United Mine Workers of*

*America v. Coronado Coal Co.*, which described the "affirmative legal recognition of their

---

[24]*See id.* at 1215 (citing *Allee v. Medrano,* 416 U.S. 802, 819 n.13 (1974)).

[25]*Allee v. Medrano,* 416 U.S. 802, 819 n.13 (1974).

[26]*Metropolitan Life Ins. Co. v. Ward,* 470 U.S. 869, 881 n.9 (1985).

[27]*NAACP v. Button*, 371 U.S. 415, 428 (1963).

[28]*Lippoldt,* 468 F.3d at 1216.

[29]*Id.* at 1215.

existence and usefulness and provisions for their protection,"[30] as compared to unincorporated associations.[31]

　　Both parties in this case evaluate the definition of "labor union" by reference to labor law.  Defendants urge the Court to look at the definition of "labor organization" in the National Labor Relations Act ("NLRA"): "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."[32]  Definitions of labor organization under other federal statutes similarly require that the purpose be, at least in part, dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.[33]  Black's Law Dictionary likewise defines "union" as "[a]n organization formed to negotiate with employers, on behalf of workers collectively, about job-related issues such as salary, benefits, hours, and working conditions."[34]  The term "labor organization" in Black's Law Dictionary does not include a definition; it simply refers readers to the definition of "union."[35]  The Court agrees that in the absence of any authority defining the scope of labor unions in the context of § 1983, the term's plain meaning, as well as definitions from other federal statutes, should be considered.

　　Defendants argue that the Complaint disclaims that KSCFF deals with the City of Hays concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions

---

[30]259 U.S. 344, 386 (1922).

[31]*Lippoldt*,  468 F.3d at 1215.

[32]29 U.S.C. § 152(5).

[33]29 U.S.C. § 402(i) (defining under LMDRA; also including in definition any "association" so engaged); 42 U.S.C. § 2000e(d) (same, Title VII and ADEA).

[34]Black's Law Dictionary 1532 (7th ed. 1999).

[35]*Id* at 879.

of work on behalf of its rank and file fire fighters, and therefore it is not plausible to contend that it is a labor union.  It is true that Plaintiffs allege several actions with which KSCFF is *not* involved.  Assuming the truth of the allegations in the Complaint, KSCFF is not the exclusive bargaining agent for fire fighters employed in any municipality.  It likewise is not involved in collective bargaining or grievances with any municipality.  Instead, the local IAFF affiliate exclusively represents all full-time fire fighters below the rank of Captain in Hays as to those issues.  The local IAFF affiliate and KSCFF are separate and autonomous entities.  However, the letter attached to the Complaint from Hays City Attorney John Bird to KSCFF raises an inference that KSCFF is a labor union.  It acknowledges that KSCFF is affiliated with the IAFF, which is indisputably a labor union, and that the organizations maintain a joint website.  And while not dispositive, in its briefing on the motion, the City characterizes KSCFF as an umbrella organization of local IAFF affiliates, including the 2119.[36]

Plaintiffs allege certain actions with which KSCFF *is* involved.  Plaintiffs allege that KSCFF is an affiliate of the IAFF that "aids and assists its members in the protection of their rights," and "focuses on the advancement of the interests of all its members throughout the state of Kansas."  Although KSCFF specifically disavows dealing with any municipality with respect to collective bargaining or the grievance process, it is reasonable to infer that aiding and assisting its members in protection of their rights encompasses dealing with employers on such issues as labor disputes, wages, rates of pay, hours of employment, or conditions of work.

Both parties attach extrinsic evidence to their briefs, attempting to show that KSCFF is or is not a labor union.  But as set forth above, the Court may not consider matters outside the pleadings at the motion to dismiss stage.  Because the standing issue in this case is intertwined

---

[36]Doc. 29-1 at 6.

with the merits, the Court would be required to convert the motion into one of summary judgment in order to consider this evidence.  The Court declines to do so.  Based on the Court's review of the factual allegations in the Complaint and the letters attached thereto, the Court finds that KSCFF states a plausible claim that it is an "other person within the jurisdiction" entitled to bring suit under § 1983.

## III.    Freedom of Association

All Defendants seek dismissal for failure to state a plausible claim that Defendants interfered with Plaintiffs' constitutional right of association.  Under the First Amendment, a public employee has a right to join and participate in a labor union.[37]  "A public employee's First Amendment rights also include 'the right . . . to associate with the union of [his or her] choice,' even one other than the exclusive bargaining agent."[38]  An "employer may not retaliate against an employee for engaging in union activity."[39]  In the Tenth Circuit, a public employee's claim of retaliation based on his protected right to association is analyzed under the four-part test in *Pickering v. Board of Education*.[40]  That test requires the plaintiff to demonstrate:

> (1) his First Amendment activity involved a matter of public concern; (2) his interests in the protected activity outweighed the employer's interest in regulating it; and (3) the protected activity was a substantial motivating factor in the employer's decision to take adverse action against him. "If the employee establishes these three factors, he wins unless (4) the employer establishes it would have taken the same action in the absence of the protected [activity]." [41]

---

[37] *Smith v. Ark. State Highway Employees, Local 1315*, 441 U.S. 463, 464–66 (1979) (per curiam); *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[38] *Morfin v. Albuquerque Pub. Schs.*, 906 F.2d 1434, 1439 (10th Cir. 1990) (quoting *Mo. Nat'l Educ. Ass'n v. New Madrid Cnty. R-1 Enlarged Sch. Dist.*, 810 F.2d 164, 166–67 (8th Cir. 1987)).

[39] *Cillo*, 739 F.3d at 460 (quoting *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969)).

[40] 391 U.S. 563 (1968).

[41] *Cillo*, 739 F.3d at 460–61 (quoting *Maestas v. Segura*, 416 F.3d 1182, 1187 (10th Cir. 2005)) (footnote omitted).

The parties do not discuss or dispute the first factor of this test.  Although it is not clear in this Circuit whether a retaliation claim based on union association requires application of this first factor at all,[42] the Court finds that Ditter's activity as Vice-President of the KSCFF was to obtain better policies and protections for all firefighters, and thus involved a matter of public concern.

Defendants argue first that conditioning Ditter's promotion on his resignation from the KSCFF is not retaliatory and therefore not actionable because there was no threat of demotion or other discipline.  But the Court must assume as true the facts alleged in the Complaint—Ditter was promoted to Captain in 2011, and in 2014 he was threatened with demotion or other disciplinary action if he did not resign from the KSCFF.  Defendants assert in the reply that Ditter's promotion was merely conditioned on his resignation with the KSCFF, arguing: "he was given an opportunity to identify his priorities: stay involved with the KSCFF and forgo a management position with the Department, or embrace his promotion and resign from the Council."[43]  Not only does this rendition of the facts require the Court to ignore Plaintiff's factual allegations that he had served as Captain for three years before being asked to "identify his priorities," but the Supreme Court has held that a public employer may not base promotion decisions on an employee's exercise of First Amendment rights.[44]  The Court agrees with Plaintiffs that even if the City's decision only involved conditioning Ditter's promotion on his resignation from the KSCFF, such conduct was sufficiently retaliatory to support a First

---

[42]*Id.* at 461 n.17 (acknowledging that it is not clear that this first factor applies to association claims, but declining to resolve because neither party challenged district court's holding that the plaintiff's union association involved a matter of public concern).

[43]Doc. 29-1 at 6.  The Court granted the City leave to reply out of time on October 21, 2015, and ordered the City to file the reply brief attached to its motion for leave (Doc. 37).  The City has still not filed the brief. Nonetheless, the Court has considered the proposed reply attached to the motion for leave.

[44]*Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990); *see also Quinn v. Elk Grove Bd. of Fire & Police Comm'rs*, No. 01 C 8504, 2003 WL 164268, at *1-3 (N.D. Ill. Jan. 22, 2003) ("It is clearly established law that a public employer may not base promotion decisions on their employees exercise of First Amendment rights.").

Amendment claim.  The facts allege that the City required Ditter to choose between his

association in the labor union and a promotion that would likely bring "considerable increases in

pay and job satisfaction."[45]

Defendants next argue that KSCFF is a state-wide umbrella organization that includes

rank and file fire fighters, so Ditter's participation in the organization as a management level

employee creates a conflict of interest that the City had a reasonable interest in prohibiting.

Defendants argue that a municipality may restrict such union activity by supervisory employees

without running afoul of the First Amendment. To be sure, the weight of authority holds that

prohibiting supervisory firefighters from belonging to labor organizations composed of rank and

file members serves a legitimate government interest in "maintaining efficient and dependable

firefighting services."[46]  The Complaint alleges however that Ditter resigned from the local IAFF

union, which was composed of rank and file firefighters, at the time of his promotion in 2011.

Plaintiffs do not dispute that supervisory employees lawfully may be prohibited from

membership in that local union.  Instead, the Complaint alleges that the KSCFF is a separate and

autonomous organization from the IAFF union that does not interact with the City in any way

that could interfere with the maintenance and operation of an efficient department.  The Court

agrees that if Plaintiff's allegations are true, they may plausibly state a claim for retaliation for

the exercise of their First Amendment rights to association because the KSCFF does not

---

[45]*Rutan*, 497 U.S. at 74.

[46]*See Conger v. Bd. of Commr's of Cnty. of Sedgwick*, No. 88-1584-C, 1990 WL 112940, at *6 (D. Kan. July 11, 1990) (collecting cases); *see also Vicksburg Firefighters Assoc. v. City of Vicksburg, Miss.*, 761 F.2d 1036, 1040 (5th Cir. 1985); *York Cnty. Firefighters Ass'n v. Cnty. of York*, 589 F.2d 775, 777–78 (4th Cir. 1978); *Elk Grove Firefighters Local No. 2340 v. Willis*, 400 F. Supp. 1097, 1100 (N.D. Ill. 1975); *Quinn v. Vill. Of Elk Grove Bd. of Fire & Police Comm'rs*, No. 01 C 8504, 2003 WL 164268, at *1–3 (N.D. Ill. Jan. 22, 2003).

represent the rank and file firefighters, thus negating any possible conflict of interest.[47]  The

City's alternative motion to dismiss for failure to state a claim is thus denied.

## IV.  Qualified Immunity

The individual Defendants, Brown and Briseno, move for dismissal under the doctrine of

qualified immunity on the individual capacity claims alleged against them.  In Section 1983

damages suits, the individual offending party may be entitled to qualified immunity from

damages liability under certain circumstances.[48]  "Qualified immunity gives government officials

breathing room to make reasonable but mistaken judgments about open legal questions."[49]  To

this end, qualified immunity shields government officials from liability for money damages

unless the plaintiff shows (1) the defendant's violation of a constitutional right; and (2) that the

right the official violated was "clearly established" at the time of the challenged conduct.[50]

Courts have discretion to decide which of the two prongs of the analysis to address first.[51]  The

qualified immunity defense must be resolved "at the earliest possible stage of litigation."[52]  For

the court to resolve the issue of qualified immunity at the earliest possible stage of litigation, the

complaint must allege enough facts to make clear the grounds on which the claim rests.[53]

As described above, the Court finds that the Complaint plausibly alleges that Defendants

violated Plaintiffs' constitutional right to associate under the First Amendment.  The Court must

therefore proceed to consider whether the right violated was clearly established at the time of the

---

[47]*See, e.g.*, *Int'l Assoc. of Firefighters, Local No. 3808 v. City of Kan. City*, 220 F.3d 969, 974–76 (8th Cir. 2000).

[48]*Gomez v. Toledo*, 446 U.S. 635, 639 (1980).

[49]*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2085 (2011).

[50]*Id.* at 2080.

[51]*Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[52]*Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).

[53]*Id.* (citing *Twombly,* 550 U.S. at 556 n.3).

challenged conduct in 2014.  A government official violates clearly established law when the contours of a right at the time of the challenged conduct are sufficiently clear so that "every 'reasonable official would have understood that what he is doing violates that right.'"[54]  A plaintiff may establish this prong "by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, 'the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'"[55]  When the clearly established requirement is "properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'"[56]  "[T]he Supreme Court has 'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'"[57]  Most recently, the Supreme Court, in *Mullenix v. Luna*, explained that "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.' This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition."'"[58]

    As discussed, under *Pickering* a balancing test applies to determine whether the municipality's interest in maintaining an efficient and effective firefighting service outweighs the employee's right to engage in union activities.  The specific nature of the KSCFF's activities and the degree to which such activities may pose a conflict of interest for Ditter are fact intensive inquiries that are not amenable to resolution based on the facts alleged in the Complaint.  This fact intensive inquiry makes it difficult at the motion to dismiss stage for the Court to define the

---

[54]*Id.* at 2083; *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

[55]*Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015) (quoting *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015)).

[56]*Robbins*, 519 F.3d at 2085 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

[57]*Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)).

[58]*Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742 (emphasis added); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)).

right asserted by Plaintiff as specifically as Defendants urge: the facts as alleged do not make plain that Ditter sought to belong to a union composed of rank and file firefighters that created a conflict of interest for the City.

As already described, at the time the City directed Ditter to resign from the KSCFF, it was clearly established that a public employee had the right to engage in union activity, and that the employee is shielded from retaliation for such associational activity. However, it was also clearly established that these rights are not absolute, so a City may prohibit a supervisory employee from participating in the same union as rank and file firefighters in order to avoid a conflict of interest. The rationale for this rule is that "those who manage the affairs of government must have the loyalty of those to whom they must delegate that managerial authority."[59] When there is an "identity of interests" between supervisors and the rank and file, it "poses a significant threat that the loyalties of the supervisors will be divided and that consequently the discipline and effectiveness of the fire department will be impaired."[60] Therefore, when balancing the government and free speech interests in fire fighter union activity cases, courts have upheld government policies prohibiting a supervisory employee from participating in a rank and file union.

The question before the Court is therefore whether City officials were on notice that Ditter's participation in the KSCFF, as alleged by Plaintiffs, fell within the protection of the First Amendment. The Court finds that at this stage of the litigation, Plaintiffs have sufficiently alleged that the individual defendants were on notice that requiring Plaintiff to resign from the KSCFF infringed on their associational rights. Plaintiffs allege that the KSCFF and the IAFF are

---

[59]*Gregorich v. Lund*, 54 F.3d 410, 417 (7th Cir. 1995).

[60]*Conger v. Bd. of Commr's of Sedgwick Cnty.*, No. 88-1584-C, 1990 WL 112940, at *6 (D. Kan. July 11, 1990); *see also Beasley v. Food Fair of N.C., Inc.*, 416 U.S. 653, 662 (1974).

affiliated, yet separate and autonomous, so there is no conflict of interest that would justify

requiring him to cease union activities.  Plaintiffs further allege that in his role as a Vice

President of the KSCFF, Ditter advocated for and lobbied on behalf of fire fighters in the western

part of Kansas, but he did not engage in any "Council business" with the City.  Ditter did

immediately resign from the rank and file local IAFF upon his promotion to Captain in 2011.

Finally, Plaintiffs allege that Defendant Brown was aware of Ditter's activities with the KSCFF

for several years before the City asked him to cease participation in the organization, suggesting

he knew that there was no conflict of interest that would justify Ditter's resignation from the

KSCFF.  Assuming the facts alleged are true, KSCFF's activities are not such that there is an

"identity of interests" with the rank and file firefighters that would create a conflict of interest

justifying the City's conduct under *Pickering*.[61]  The Court is mindful that:

> Differences in the nature of the competing interests from case to
> case make it difficult for a government official to determine, in the
> absence of case law that is very closely analogous, whether the
> balance that he strikes is an appropriate accommodation of the
> competing individual and governmental interests.  We must
> remember that government officials are not expected to be
> prescient and are not liable for damages simply because they
> legitimately but mistakenly believed that the balancing of interests
> tipped in the State's favor.[62]

However, at this stage of the litigation, the Court is unable to determine that the individual

Defendants legitimately but mistakenly believed that the balancing of interests tipped in the

State's favor under the facts as alleged.  Therefore, the Court must deny the individual

Defendants' motion to dismiss under the doctrine of qualified immunity.

---

[61]*Compare Int'l Assoc. of Firefighters, Local No. 3808 v. City of Kan. City*, 220 F.3d 969, 974–76 (8th Cir. 2000) (finding no reasonable fear of a conflict of interest where supervisory firefighters belonged to an affiliated, but independent and autonomous union from rank and file firefighters), *with Norbeck v. Davenport Comm'y Sch. Dist.*, 545 F.3d 63, 67–68 (8th Cir. 1976) (finding school board's interest in efficient school administration outweighed right of school principal to collectively bargain for classroom teachers he was hired to supervise).

[62]*Gregorich*, 54 F.3d at 414–15 (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1213 (7th Cir.1988) (en banc)); *see also Buzek v. Cnty. of Saunders*, 972 F.2d 992, 997 (8th Cir. 1992).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant City of Hays'
Motion to Dismiss (Doc. 16) is **denied.**

**IT IS FURTHER ORDERED** that Defendants Gary Brown, Sr. and Paul Briseno's
Motion to Dismiss (Doc. 20) is **denied**.

**IT IS SO ORDERED.**

Dated: <u>January 7, 2016</u>

       S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE